311-0657 Mark v. Harlan, that's you. It's Vongphouthone. Everybody's afraid. Your Honors, good morning. My name is David Hunt. I'm here for Mr. Vongphouthone and his appeal against Harlan Laboratories. This case comes down to one element of law, which is whether or not Illinois had jurisdiction over the claim. And it is undisputed the law that applies to it. Council and I, I think, have both cited the same exact cases. We just come to different conclusions about it. The law is clear that where the last act necessary or required for employment takes place, that's the place that controls the contract. So the sole issue in this case is whether or not the filling out of the paperwork, the taking of the physical, and the drug test were the last acts necessary for Mr. Vongphouthone's employment with the respondent. It is our position that these were not conditioned precedents, and there's ample evidence in the record to show why that's not the case. Just so we're clear, if those requirements were not even there, we wouldn't be here today. All the negotiations took place in Illinois. The job was offered and accepted when he was in Illinois. An apartment was rented for him, deposit paid by the respondent while he was still residing in Illinois. He quit his job, and a start date was established while he was in Illinois. Counsel, what do you make of Siegel's testimony that pursuant to company policy, the claimant is not hired until he signs the pre-employment documentation and takes the physical and drug test? And also this employee annual contract declaration agreement he testified that was important. So, I mean, arguably there's some documents you'd have to, were required to be signed at some point. Siegel says it needs to be signed before you ask to become employed. What's your response to that? I question whether it's true in this particular case, not whether it's true in general. I think Mr. Van Toten is being looked at as a new employee, and I don't think he was a new employee. He'd worked there for four years already doing the exact same job. He did quit, though, didn't he? He did, but there was only a six-month gap when he didn't work there, and then they hired him back to do the exact same job. So, while I understand what you're saying, so I question it first on that basis. I question it secondly on the basis, and it's really the whole contention that I have in this case, is he was already working. He shows up at 5. Is there any doubt that if he would have taken the drug test and tested positive for some illegal drug that he would not have been hired? No, I think he would have been fired. I don't think he would have not been hired. I think he would have been fired. This is, none of the judges that have ruled on this issue have given this any time in their decisions. I don't understand, if you're working, how you don't have the job, okay? Are you saying because there's the rub there about this time, wasn't there some question of whether he really punched in and was working? No, absolutely no question. Unrebutted testimony. I produced a paycheck for 80 hours, okay? If he didn't start work till 9 so he could take the test, then he wouldn't have got paid for 80 hours. He got paid for the whole time. And the only testimony that the respondent had in this case was from Siegel, who said he wasn't there. If he's not there, how can he testify that Mark Bonaparte wasn't there either? All right, so your argument has to be that these pre-employment documents, the drug test, physical test, are not conditions precedent. Is that your position? Absolutely. And my third reason for that is the employment agreement that a respondent put in as Exhibit 15 that wasn't signed by both parties until March. He started in December, okay? And Exhibit 15, where it outlines their offer, outlines what they're offering, outlines what he's going to get, outlines his obligations, wasn't even signed until March of the next year. So if the paperwork was all that important, at that point he was working for four months. What if he doesn't sign that document? Does that mean he wasn't hired? So when was these documents signed then, the pre-employment agreement, the drug test? When were those documents signed? That document was signed on its confirmation letter of employment. It's Exhibit 15, and it was signed by Mark Bonaparte on March 7th of 2001. When did he start in 2001? Yeah, he started work for them in December, December 11th of 2000. This is the first time or second time? The second time. I can't argue that he quit. I mean, I'm not arguing that he was a continual employee from the day, from 1996 until the day he was hurt. He quit for six months. It was all, that's, no doubt about that. He quit for six months, and then he signed the agreements a second time, right? They offered him a job in 2000, in December of 2000, November of 2000. He came back and started work on Monday morning, December 11th, 2000. Any agreements were signed months later? 3-7-2001, right there in the record. So if that wasn't signed until four months after he started working, is that a condition precedent? I don't hardly think it is. So it's for those three reasons that I don't think, I don't think that the test, I don't think that the, they, he was hired. They missed him. He did a good job. And they sought him. He didn't call and say, can I have my job back? They called him and said, we want you back. Right? He knew exactly what he was doing. He knew exactly how to do it. And it's no stretch that he could have done it at five in the morning. Okay, all he had to do was ask his supervisor, what formula are we making today? We're making Purina-Ralston mix. Okay. And off he goes to do his job. But take it you argued before the commission this three or four-month discrepancy in between the time he actually clocked on and when he signed the documents. Well, I didn't. Or did you not make that argument before the commission? I didn't bring it out as much as I should have, okay? It was only until this Court that I, when I was re-looking at all the evidence and I saw that Exhibit 15, and I said, well, why didn't I argue as strongly about that particular document? I was, I'm focused on the fact that he worked for two hours before he did anything, okay? Before they had him sign anything, he had already been working for two hours. Well, that's his testimony. But there's no testimony to rebut it. None. No competent evidence. Unless you can, it's like me testifying to where your honors were two hours before you got here today. I have no idea. I wasn't there. We're reviewing the files, of course. I understand. But Mr. Siegel wasn't there. He testified he wasn't there. He doesn't start till seven. He did testify that there was no time card. No, he, and I question that too, your honor. They have all these other documents that were just as old. They have the receipt from the motel that they paid for, for him to come up the night before, all right? But they don't have the time card? I have the time, I have his time, his check, you know, so why can't they produce the time card? Why can't they produce the supervisor that would have said, I was there at five, he didn't show up till seven because he had the drug test that day? That guy wasn't there either. And they have total control over that. I can't subpoena things in Wisconsin. They're not going to, I have no subpoena power over anybody in Wisconsin, so it wasn't going to work. So I just don't think that those documents that were filled out, I don't think the test that was performed, I don't think any of it was conditioned precedent. I think they were conditions for continued employment, and I wouldn't argue about that, but I don't think they were conditions prerequisite to his employment. And I don't think that there's anything in the record that says otherwise. Thank you. Counsel, please. May it please the Court, my name is Mark Zaff. I represent Parliament. In this case, I'm asking that you affirm the decision of the Circuit Court of Peoria County that found that Illinois does not have jurisdiction over this claim since the evidence showed that the employment contract was made in Wisconsin where the last acts took place. When was the employment contract signed? That was a job, you're referring to Exhibit 15 that counsel is talking about? Right. That was a job offer, a memorandum of job offer that was made to the petitioner, and it basically said that, it pointed out that if this and other terms are met, that this is the employment that we have for you. If other terms are met. When that document was signed, had he taken the drug test yet? Yes. Okay. Yeah, he had taken the other drug test. When did he take the drug test and the physical? After he started working or before? The first day. His first day back on the job. The first day back on the job is when he took those. And I think one thing I just want to point out in this case is that the case was tried in 2010. He was hired in the year 2000. We're talking about testimony and events that happened 10 years before. This case was tried on what took place 10 years before when he first came back and was hired, December 11, 2000. You're saying he took the drug test and physical the day he started? Yes. And you have some documents that support that in the record? Absolutely. And also he signed the declaration that he hadn't been exposed to any animals that would affect the. . . And what was the date there of those documents? The same date. The first day back. What is the date? December 11, 2000. Now months later his counsel is represented. No, Your Honors. And I'm saying. . . Well, there's two. . . Let's get this straight. Let's get there. Two different things. You've got this employee animal contract declaration agreement, which I think opposing counsel is not disputing, was signed on the day that he showed up at work. Okay? I don't think it's disputed that he took physical on the day that he showed up to work. I think what was brought before us was that there's an Exhibit 15, which apparently is an employee handbook type of thing or some other type of document that apparently was signed. . . that was signed sometime thereafter. Is that correct? This was a confirmation letter of employment that was signed sometime thereafter, correct? This wasn't signed while he was in Illinois. We've got that understood. Okay. What's a confirmation of employment? What do you consider that document to be? I think that this just memorializes what the offer was, what his pay was, that he was getting his seniority. But that's after he's already on the job, right? This was. . . Or it's dated after he's on the job, right? It's signed by him after he was already on the job. I don't have to. . . Well, we know all of that. So let's go to the crux and the kernel of the matter. Is that a condition preceding the signing of that document, the memo, the memorandum? In your view, is it condition preceding? This document? That's correct. No. No. Not this document. This is. . . This is not. . . This is not the contract of employment. The contract of employment was come to Wisconsin, take the drug test, take the pre-employment physical, sign your acknowledgment for the employee handbook, sign a declaration you haven't been around any type of other animals. Okay. So there's an acknowledgment of an employee handbook that is also signed on that first day. Yes. And you have that document. Yes. Okay. There's four physical documents, four physical items that were done on that day. The first day. The first day back in Wisconsin, every single one of them in Wisconsin. He went to the hospital in Wisconsin for the drug test. He went to the hospital in Wisconsin for the physical. He signed those documents in Wisconsin. I mean, again, we're talking about a trial ten years after his first day back. We have the documents. The documents speak for themselves and they're dated. Okay. Now, it seems like the real issue is, was he at his machine at 5 a.m. in the morning before these documents were signed? Our witness, and I don't know why he's not credible, he says it's very unlikely. The schedules for the food that they make for these laboratory animals are published in advance. He has to know specifically where they are in the manufacturing of this. Okay. Just a minute. He had no personal knowledge whether he was there or not. Right. He didn't show up until later that day. Your witness had no personal knowledge of whether he was there working at 5 a.m. or not. But I will say. Is that correct? Yes. He was not there. Yes. Right. He can't testify to something he doesn't know. I mean, he can only testify about what's in his own personal knowledge. That is correct. He can say it's unlikely or not likely, but he doesn't know either way. That's correct. That's the evidence. That's correct. Okay. But the petitioner did say, I punched in my time card. And my witness said he wouldn't have had his time card yet. He hadn't gone through the order. Well, but he didn't know either way because he doesn't have the time card. He didn't produce a time card that he punched in at 9 a.m. or 10 a.m. either, right? This was 10 years ago. I understand. You can say this is likely or unlikely, but that's not, you know, evidence of his personal knowledge that he knows one way or another. He was not there at that time when the petitioner first arrived. That's correct. Okay. Now, let me ask a question. The claimant was working at another job when your client called and said, we'd like you back. Yes. He quit that job to move to this one. That's my understanding. And he'd already quit his other job before these preconditions you're talking about were met. That's my understanding. He did that based on the offer for a job that the employer made. For an offer, correct. Yes. That's my understanding. And I believe that that's analogous to the energy erectors case. I can't remember that right now, but where was I here? Well, I'd like to go back before we go back. We do seem to have opposing counsel saying, okay, there's the time card issue. I understand there's 10 years gone by, et cetera. But there apparently is in evidence a paycheck with hours or some documentation that there was 80 hours worth performed, which he's arguing that the only way you get to 80 hours is that if you're on the machine at the time that the claimant's testifying you was. I don't know. Did they pay him for the whole day because he showed up then? Did he drink coffee? I mean, I don't know, but doesn't an employer have a right? I mean, isn't it a mutual consent for an employment contract? Even if he did go in and start working on the machine, doesn't the employer have the right to still talk to him? Has he been convicted of a felony since then? Is he incapacitated in some capacity? Doesn't he have these documents to sign? The employer was there. He testified. Had he not signed these documents, all of which took place in Wisconsin, he would not have been hired. Again, the physical, the drug test took back there. But, I mean, it's just not what the claimant thinks. I think it's that Cougar case. But even if the claimant did go ahead and switch the machine on, that's not proof of a contract. That's not mutual assent between the two parties. The employer obviously has the chance to talk to him, have him fill out documentation. I mean, if he were to refuse these things, he wouldn't have been hired. He wouldn't have been hired. Unless the panel has any other questions, that's all I have. Thank you. First, I apologize to the Justice for confusing you. There were two things. Everything that counsel was just talking about, the physical, the drug test, the I haven't been in contact with any other animals. It took place on the first day, not months later. And Mr. Siegel testified that it would have taken place as soon as practical after he arrived, which was sometime after 7 o'clock. The first day, right. And so if that's the key to all this, then I fall back to my first argument, which is he was already working. He's already been working. And I've provided proof that he's already been working. And they provided none. All right. Or nothing that they can stand on. And counsel just brought up, well, it was 10 years ago. It was 10 years ago. Look at every one of their exhibits. They're all from 10 years ago. They found 15 other documents from 10 years ago. Okay. But they couldn't find the time card. All right. And so I don't buy into the 10 years ago argument. At the end of the day, he was working there. And I've proven it. And no one seems to tell me, just tell me if it's not. But if you don't, if you're working for two hours, you have a job. All right. If you get fired after that because you don't sign some papers or because you've been playing with rats, then fine. But you had the job. All right. He had the job when he showed up. As far as mutual consent of employment being the key here, if that's the whole key here, then I guess he wasn't working until March of 2001 when he signed the document. That's the first mutual consent of employment we have. And they're never arguing about that because they can't. Because at that point, it's not two hours that he's been working. It's four months. And they can hardly say that that was a condition of employment when he'd been working there for four months. That's why they're not making that document the key document in the case. But you don't get to pick and choose. Okay. If you're signing papers and you have to sign the papers to have the job, okay, don't just talk about the ones that were signed that morning. Talk about the one that was signed four months later. Thank you. The court will take the matter under review for disposition.